# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE E. MODESITT,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 09-0483-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On March 12, 2009, Christine E. Modesitt ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on June 16, 2009. On January 5, 2010, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed.

**BACKGROUND**

Plaintiff is a 44 year old female who was found to have the medically determinable severe impairments of bipolar disorder, generalized anxiety disorder, and substance addiction disorder. (AR 397.) Plaintiff has not engaged in substantial gainful activity since February 26, 2003, the application date. (Id.)

Plaintiff's claim for SSI benefits was denied initially (AR 33-36) and on reconsideration. (AR 38-41.) Plaintiff filed a written request for hearing (AR 42), which was held before Administrative Law Judge ("ALJ") Philip E. Moulaison on February 18, 2005, in San Bernardino, California. (AR 344-369.) The ALJ issued an unfavorable decision on March 25, 2005. (AR 23-32.) On April 11, 2005, Plaintiff filed a Request for Review of Hearing Decision. (AR 52.) The Appeals Council remanded the case for further proceedings on July 12, 2005. (AR 53-56.)

A supplemental hearing was conducted by ALJ Joseph D. Schloss on February 22, 2006. (AR 370-91.) On June 24, 2006, the ALJ issued a decision denying benefits. (AR 12-19.) On July 31, 2006, Plaintiff filed a Request for Review of Hearing Decision (AR 10), which was denied by the Appeals Council on September 15, 2006. (AR 7-9.)

On November 21, 2006, Plaintiff filed a complaint in the United States District Court for the Central District of California, Case No. CV 06-1229-JWJ. On March 28, 2008, the District Court remanded the case to the Commissioner. (AR 416-438.) On May 17, 2008, the Appeals Council remanded the case to the ALJ. (AR 441.)

On August 14, 2008, a second supplemental hearing was held before ALJ Schloss. (AR 1179.) Plaintiff appeared and testified at the hearing. (AR 1193-1197.) Medical expert Miriam Sherman, M.D., and vocational expert ("VE") Sandra Fioretti also appeared and testified. (AR 1183-1193.) On November 18, 2008, the ALJ issued an unfavorable decision. (AR 392-401.) Thereafter, Plaintiff commenced the present action.

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

1. Whether the ALJ complied with the District Court's remand order to consider Plaintiff's credibility under the proper legal standards?

2. Whether the ALJ properly considered the State agency findings?

3. Whether the ALJ properly considered the treating psychiatrist's opinion?

4. Whether the ALJ properly considered the treating clinician's opinion?

5. Whether the ALJ properly considered Dr. Multani's opinion?

6. Whether the ALJ posed a complete hypothetical question to the vocational expert?

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla'. . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant an do, given the RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## DISCUSSION

### A. The ALJ Properly Considered Plaintiff's Credibility and Complied With the Remand Order

The District Court found that the ALJ had failed to provide clear and convincing reasons for discrediting Plaintiff's subjective complaints and remanded the matter to the Commissioner for proper consideration of Plaintiff's credibility. (AR 437.) Plaintiff contends that the ALJ failed to comply with the remand order because he failed to make proper credibility findings. (JS 3.) Plaintiff's contention is without merit. The record is clear that the ALJ properly considered Plaintiff's subjective symptom testimony and rejected it as not credible based on Plaintiff's inconsistent statements about her substance abuse and because her statements regarding her limitations were inconsistent with the medical records.

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1281-82 esp. n. 2 (9th Cir. 1995); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). Once the claimant produces objective medical

evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's subjective symptom testimony not credible, the ALJ must make specific findings that support this conclusion. Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Reddick, 157 F.3d 722; Smolen, 80 F.3d at 1283-84. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

      In evaluating a claimant's credibility, the ALJ may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. The ALJ also may consider numerous additional factors, including the claimant's prior inconsistent statements or other inconsistent testimony and physician and third-party testimony about the nature, severity, and effect of the claimant's symptoms. See Smolen, 80 F.3d at 1284 (citations omitted); see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (in assessing claimant's credibility, ALJ can consider prior conflicting statements concerning drug and/or alcohol abuse). If the claimant testifies as to symptoms greater than normally would be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle v. Commissioiner, Social Security, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ summarized Plaintiff's hearing testimony as follows:

> At the hearing, the claimant testified that she was taking her medications today and was feeling drowsy, almost falling asleep. She stated that her depression went through stages; she throws things away that she needs, does not care about her life, does not talk to anyone, is afraid of people and only stays by the people she lives with. She reported that her last drink was 40 days ago. She does not drink any longer as she is on too much medication. She does not attend AA. Now she cannot concentrate and cannot remember to take medication. Her boyfriend and kids help her with medication.

(AR 399.)

The ALJ acknowledged that Plaintiff's impairments reasonably could be expected to produce the alleged symptoms but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (AR 399.) The RFC assessment to which the ALJ referred was made at step 3 of the sequential evaluation:

> Without the use of alcohol, in activities of daily living, the claimant has mild restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has mild difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> With the use of alcohol, in activities of daily living, the claimant has moderate restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has

experienced no episodes of decompensation, which have been of extended duration.

(AR 398.)

The ALJ's adverse credibility determination properly was based on the lack of support in the medical records for ALJ's assessment of Plaintiff's limitations without the use of alcohol as well as Plaintiff's inconsistent statements regarding her substance abuse, and was supported by substantial evidence.

The ALJ properly relied on information from Plaintiff's medical records in assessing her credibility. See 20 C.F.R. § 416.929(c)(1)&(2) (2009) (requiring consideration of medical history, medical signs and laboratory findings, and objective medical evidence in evaluating the extent and impact of alleged pain); Batson v. Comm'r, 359 F.3d 1190, 1196 (9th Cir. 2003) (ALJ properly relied on objective medical evidence and medical opinions in determining credibility). First, the ALJ considered the testimony of medical expert Dr. Sherman. (AR 399, 1183-1189.) Dr. Sherman testified at the hearing that, based upon her review of the records, Plaintiff did not have any mental impairment that met or equaled a Listing. (AR 1184.) She also testified that, without alcohol abuse, Plaintiff would be capable of simple, repetitive tasks with no contact with the public. (AR 1186.) The ALJ considered the opinion of State Agency physician Douglas R. Conte, M.D., who reviewed the entire record on June 2, 2008, and concluded that Plaintiff could sustain unskilled, non-detailed tasks with adequate pace and persistence, and could relate to coworkers and supervisors, but could not work with the public. (AR 400, 886-904.) The ALJ also considered the treatment records, which indicated Plaintiff's symptoms of anxiety and depression while abusing alcohol. (AR 399-400, 956, 984, 1006, 1115.) See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")

The ALJ also properly discounted Plaintiff's credibility based on her inconsistent statements regarding her alcohol abuse. (AR 399-400.) Thomas v. Barnhart, 278 F.3d 948, 959 (9th Cir. 2002) (ALJ may rely on lack of candor as to drug and alcohol use to discount claimant's credibility as to severity of pain). The ALJ "noted that in the previous hearing held on February 22, 2006, the claimant stated that she does not drink at all, and then said that she quit drinking 3 years ago." (AR 400; see also AR 383-384.) The ALJ also noted that Plaintiff had reported to her doctors on June 13, 2008, that she had no history of drug or alcohol use. (AR 400, 959.) However, the record is replete with evidence of alcohol abuse, including five separate incidents in 2008 that were referenced by the ALJ: On February 27, 2008, Plaintiff presented at Kaiser Permanente, Fontana, with depression and suicidal thoughts. (AR 982.) She admitted to recently drinking two 24 ounce and four 12 ounce beers (AR 399, 982-984) and "alcohol intoxication" was noted. (AR 984.) On March 5, 2008, Plaintiff was admitted to the hospital on a 5150 for being a danger to self. (AR 875-76.) She reported that she was drinking beer all day while also taking Klonopin "quite a bit." (AR 399, 875, 1115.) She admitted to "drinking 12 cans of beer a day." (AR 875.) She was diagnosed with bipolar disorder, mixed type, and alcohol abuse. (AR 399, 870, 876.) The doctor noted that "she is a drug seeker still." (AR 399, 870.) On May 17, 2008, Plaintiff was seen for an injury to her right lower extremity after a slip and fall. She admitted drinking several beers and taking Klonopin. (AR 400, 973.) The clinical impressions were strained right hip and substance abuse (alcohol). (AR 974.) On June 21, 2008, Plaintiff presented with depression, anxiety and bizarre behavior. (AR 955.) She admitted to recent alcohol consumption. (AR 400, 955-56.) The clinical impression was alcohol intoxication. (AR 956.) On July 2, 2008, Plaintiff was admitted to Kaiser Hospital with alcohol abuse, possible withdrawal. (AR 400, 1006.)

The medical records also reveal other instances of inconsistent statements regarding alcohol abuse: On January 7, 2008, Plaintiff reported: "Alcohol use. History of drug use: marijuana" (AR 675) and was found to be legally intoxicated. (AR 677.) However, on

February 2, 2008, Plaintiff reported: "No alcohol use or drug use."  (AR 672.)  Then, on February 13, 2008, Plaintiff reported occasional alcohol use (AR 665), and that she had "a couple cans a night" of alcohol.  (AR 668.)

Thus, the ALJ properly rejected Plaintiff's testimony based, in part, on the record of Plaintiff's inconsistent statements regarding her substance abuse.

Where, as here, the ALJ made specific findings justifying his decision to discredit Plaintiff's subjective symptom testimony, and substantial evidence in the record supports those findings, the ALJ's decision must be upheld.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

**B.     The ALJ Properly Considered the State Agency Findings of Dr. Conte**

On June 2, 2008, State Agency medical consultant Dr. Conte completed a Mental Residual Functional Capacity Assessment.  (AR 897-899.)  In the Summary Conclusions portion of his report, Dr. Conte indicated that Plaintiff had several moderate functional limitations.  (AR 897-898.)  Based on these stated limitations, Dr. Conte then concluded in his Functional Capacity Assessment that Plaintiff could do unskilled, nondetailed, nonpublic work.  (AR 899.)  Plaintiff contends that the ALJ erred by not properly considering Dr. Conte's opinion.  This contention is without merit.

The ALJ is required to consider all evidence relevant to Plaintiff's claim, including medical opinions from physicians or other acceptable medical sources.  See 20 C.F.R. §§ 404.1527, 416.927.  As to the consideration of medical opinions, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians (who examine and treat); (2) examining physicians (who examine but do not treat); and (3) non-examining physicians (who neither examine nor treat).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of a treating physician is generally given more weight than the opinion of a non-treating physician.  Orn, 495 F.3d at 631.  A non-examining physician's opinion, such as Dr. Conte's opinion, constitutes substantial evidence when it is supported by other evidence in the record and is consistent with it.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a non-examining physician's opinion cannot by itself constitute

substantial evidence. Lester, 81 F.3d at 831; see also Widmark v. Barnhart, 454 F.3d 1063, 1066 n. 2 (9th Cir. 2006).

Plaintiff's contention that "the ALJ ignored without explanation the State Agency findings regarding [P]laintiff's multiple limitations" (JS 9) is incorrect. The ALJ specifically discussed Dr. Conte's findings, as follows:

> On June 19, 2008, State Agency medical consultant Douglas R. Conte, M.D. noted that the claimant was alleging new impairments of diabetes mellitus and asthma, but his assessment was that these were non-severe. Dr. Conte also noted that extensive medical evidence of record shows concurrent abuse of benzodiazepines and alcohol; treatment also complicated by non-compliance with treatment. When sober and in treatment she is able to provide activities of daily living within normal limits. The alleged severity is not fully supported – the claimant can support unskilled, nondetailed tasks with adequate pace and persistence, can relate to coworkers and supervisors, but cannot work with the public . . . .

(AR 400.)

Based on the medical expert's testimony and Dr. Conte's conclusions, the ALJ found that, without alcohol abuse, Plaintiff "would have mild limitations in activities of daily living and concentration persistence or pace ,and moderate limitations in social functioning. . . . She can perform simple repetitive, non-public tasks. The best diagnoses would still be substance induced mood disorder." (AR 399.) The ALJ essentially adopted Dr. Conte's findings in concluding that Plaintiff had the RFC to perform unskilled, nondetailed tasks with adequate pace and persistence, can relate to coworkers and supervisors, but cannot work with the public. (AR 398, 400.)

In claiming that the ALJ failed to consider Dr. Conte's opinion properly, Plaintiff erroneously focuses exclusively on the Summary Conclusions section of the Mental Residual Functional Capacity Assessment. (AR 897.) As the form itself indicates, the Summary Conclusions section is a recording of summary conclusions derived from the evidence in the

file. (Id.) A more detailed explanation of the degree of limitations, as well as any other assessment information, is recorded in Section III (Functional Capacity Assessment). These limitations were accepted by the ALJ and incorporated into his RFC assessment.

Thus, the record is clear that the ALJ did not fail to consider Dr. Conte's opinion. Rather, the ALJ properly considered Dr. Conte's report and ultimately adopted the limitations Dr. Conte recorded in the Functional Capacity Assessment.

### C. The ALJ Did Not Err In Failing to Discuss the Treating Psychiatrist's Report

On February 10, 2008, Plaintiff presented at Western Medical Center Anaheim on a 5150 for being a danger to self. (AR 879.) Ravinder Singh, M.D., completed treatment notes stating a diagnostic impression of "major depressive disorder with psychotic features, most likely bipolar" and "alcohol abuse." (AR 879-880.) Dr. Singh's notes also indicate that Plaintiff was a binge drinker, had recently consumed four beers, and was not taking her medications. (AR 879.) Dr. Singh assessed Plaintiff with a Global Assessment of Functioning ("GAF") Score of 25.[2] (AR 880.)

Plaintiff contends that the ALJ erred by ignoring Dr. Singh's treatment notes in his decision. (JS 12.) This contention is without merit.

The ALJ "need not discuss *all* evidence presented" to him. Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original); see also Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ need not discuss every piece of evidence). The ALJ must explain only why "significant probative evidence has been rejected." Vincent, 739 F.2d at 1395 (internal quotations and citation omitted). As an initial matter, there is no indication that Dr. Singh's assessment of Plaintiff's condition with alcohol abuse was "rejected." Rather, Dr. Singh's treatment notes were not

---

[2] A GAF score of 21 to 30 indicates: "Behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends." *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

12

"significant probative evidence," and it was not erroneous for the ALJ to have failed to discuss them.

Dr. Singh's treatment notes indicated that Plaintiff was under the influence of alcohol and was not taking her medications; his diagnosis included "alcohol abuse." (AR 879.) The regulations require the ALJ to determine "which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." Parra, 481 F.3d at 747 (citing 20 C.F.R. § 404.1535(b)). In other words, the ALJ is required to determine a claimant's RFC without drug or alcohol abuse. Id. It is the claimant's burden to show that she is disabled without drug or alcohol abuse. Id. Accordingly, Plaintiff's reliance on treatment notes which assess her condition with alcohol abuse is misplaced. The issue is which of the disabling limitations would remain if she was not using alcohol. See id. Here, Dr. Singh's low GAF score of 25 clearly reflects the severity of Plaintiff's mental condition with alcohol abuse. (AR 880.) It does not assess Plaintiff's mental condition without alcohol abuse and, therefore, does not contradict the ALJ's finding that Plaintiff is not disabled without alcohol abuse.[3]

In addition, Dr. Singh's treatment notes do not constitute a "medical opinion," as defined in the regulations. The regulations provide that the ALJ "will always consider the

---

[3] The February 10, 2008, treatment notes also are consistent with Dr. Singh's March 3, 2008, intake notes (AR 876-76), and his March 5, 2008, discharge notes. (AR 870-71.) On March 5, 2008, Plaintiff again was admitted to the hospital on a 5150 for being a danger to self. (AR 870.) Upon admission, Dr. Singh noted Plaintiff's statement that "she is depressed and she wanted to kill herself, and the patient admits the patient [is] drinking 12 cans of beer a day." (AR 875.) The intake diagnosis was "bipolar disorder, mixed type" and "alcohol abuse." (AR 876.) Dr. Singh noted a discharge diagnosis that included "alcohol and benzodiazepine abuse." (AR 870.) He noted that, on the day Plaintiff was admitted to the hospital, she "had been drinking some kind of beer all day, also has been using Klonopin quite a bit." (Id.) Plaintiff "was treated and detoxed symptomatically . . . ." It was noted that "she is a drug seeker still." (Id.) All of these treatment notes clearly assess Plaintiff's condition with alcohol abuse and are not probative in determining Plaintiff's RFC without alcohol abuse. Accordingly, the ALJ did not err by failing to discuss them.

13

medical opinions in [the claimant's] case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). "Medical opinions" are defined as follows:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(b) (stating that "medical reports" should include medical history, clinical findings, laboratory findings, diagnosis, treatment prescribed, prognosis, and RFC).

Although the medical opinions of treating physicians are entitled to "greater weight" and the ALJ must provide "clear and convincing reasons" for rejecting the uncontroverted opinion of a treating physician, Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), Dr. Singh's treatment notes do not qualify as a "medical opinion" that required the ALJ to state "clear and convincing reasons" if they were rejected. Rather, Dr. Singh's treatment notes, while providing a diagnosis of major depressive disorder, most likely bipolar, and alcohol abuse, do not mention what Plaintiff can do despite her impairments or contain any consequent mental restrictions. (AR 879-880.) Accordingly, the treatment notes do not fit within the definition of a "medical opinion" and the ALJ was not required to discuss them in his decision.

Dr. Singh's treatment notes were not probative to the issue of Plaintiff's RFC without alcohol abuse because they considered Plaintiff's current condition with alcohol abuse. The ALJ was required by law to consider Plaintiff's condition without alcohol abuse. Thus, there is no indication that the ALJ rejected probative evidence, and no further discussion or explanation was needed. See Vincent, 739 F.2d at 1394-95 (ALJ only required to explain why probative evidence has been rejected). This was not a case of "conflicting medical viewpoints but one in which differing opinions 'are not drawn from the same facts.'" Sprague

v. Bowen, 812 F.3d 1226, 1231 (9th Cir. 1987). Accordingly, the ALJ did not err by failing to discuss Dr. Singh's treatment notes.

### D. The ALJ Did Not Err In Failing to Discuss the Treating Clinician's Report

On February 27, 2008, a treating clinician[4] completed a psychiatric evaluation of Plaintiff at Kaiser Permanente Fontana Medical Center. (AR 657-661.) The report indicated findings of "Major Dep[ression] Recurrent R/O alcohol abuse" and assessed Plaintiff with a GAF score of 50.[5] (AR 660.) The report also indicated that Plaintiff was "hearing voices" that "told her to hurt herself" and that Plaintiff was "doing some drinking," "drank 6 beers tonight," and "drinks daily." (AR 657, 658.)

Plaintiff contends that this report was "relevant evidence" and the ALJ erred because he "totally failed to discuss or even mention it anywhere in his decision." (JS 13.) Plaintiff's contention is without merit.

Again, the ALJ "need not discuss *all* evidence presented" to him. Vincent, 739 F.2d at 1394-95; see also Howard, 341 F.3d at 1012. The ALJ must only explain why "significant probative evidence has been rejected." Vincent, 739 F.2d at 1395 (internal quotations and citation omitted). Moreover, the ALJ was required to consider Plaintiff's limitations without alcohol abuse. Parra, 481 F.3d at 747. Here, it is clear from the report that Plaintiff was under the influence of alcohol and was abusing alcohol at the time she was evaluated. (See AR 657, 658, 660.) Plaintiff's low GAF score of 50 plainly reflects the severity of her mental condition with alcohol abuse and was not inconsistent with the ALJ's finding that Plaintiff is not disabled without alcohol abuse. The treating clinician's report was not probative to the ALJ's RFC assessment without alcohol abuse because it considered Plaintiff's condition with

---

[4] The treating clinician's name is illegible. (AR 661.)

[5] A GAF score of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

alcohol abuse.[6] There is no indication that the ALJ rejected probative evidence from the treating clinician's report, and no further discussion or explanation was needed. See Vincent, 739 F.2d at 1394-95 (ALJ only required to explain why probative evidence has been rejected). Again, this was not a case of "conflicting medical viewpoints but one in which differing opinions 'are not drawn from the same facts.'" Sprague, 812 F.3d at 1231.

### E. The ALJ Properly Considered the Report of Treating Physician Dr. Multani

Gurmeet S. Multani, M.D., a treating physician, completed a "Work Capacity Evaluation (Mental)" ("Mental Evaluation") regarding Plaintiff. (AR 1140-41.) The Mental Evaluation is a two-page check-the-box form from the office of Plaintiff's counsel. (Id.) The Mental Evaluation itself does not indicate any historic treating relationship with Plaintiff, there is no indication that Dr. Multani examined Plaintiff in connection with it, and there is no basis on which to determine the reason for any of Dr. Multani's conclusions evidenced by the checked boxes. Although the date is illegible, Plaintiff represents that the Mental Evaluation was completed July 21, 2008. (JS 16.)

Plaintiff contends that the ALJ erred by failing "to discuss or even mention [the Mental Evaluation] anywhere in his decision." (JS 16.) Plaintiff's contention is without merit.

The Mental Evaluation does not constitute significant probative evidence that the ALJ was required to discuss. See Vincent, 739 F.2d at 1394-95. The Mental Evaluation is a two-page check-the-box form, which does not meet the requirements of a medical report, as defined by the regulations. 20 C.F.R. § 416.913(b) states that a "medical report" should include a diagnosis and objective or clinical support for the stated limitations. Dr. Multani's report did not include either. (See AR 1140-41.) Accordingly, Dr. Multani's report does not constitute a "medical opinion" of a treating physician that requires special consideration. See Orn, 495 F.3d at 631. Moreover, Dr. Multani completed his report during a time that the

---

[6] Moreover, as Plaintiff concedes (JS 13), the treating clinician was not a physician or other acceptable medical source. 20 C.F.R. §§ 416.913(a), 414.1513(a). The ALJ may consider the opinion of a treating clinician, 20 C.F.R. § 416.913(d), and may accord it less weight than opinions from an acceptable medical source. Gomez v. Chater, 74 F.3d 967, 971-72 (9th Cir. 1996).

16

records show Plaintiff was abusing alcohol. Only three weeks earlier, Plaintiff had been admitted to the hospital for alcohol abuse, possible withdrawal. (AR 400, 1006.) The Mental Evaluation fails to address Plaintiff's alcohol abuse or indicate whether Dr. Multani's assessment considers Plaintiff's limitations with or without alcohol abuse. Thus, the two-page box-checked Mental Evaluation did not constitute "significant probative evidence" that the ALJ was required to discuss. See Vincent, 739 F.2d at 1394-95.

Moreover, even if the Mental Evaluation did constitute a "medical opinion," as defined by the regulations, the ALJ was not obligated to accept it in his RFC because it was "brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, even a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); see also Batson, 359 F.3d at 1195; Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). Dr. Multani completed a standardized report that consisted of check-off boxes without accompanying narrative or observational analysis. The ALJ was well within his rights to reject the Mental Evaluation as a wholly conclusory "check the box" document. See Batson, 359 F.3d at 1195 (ALJ properly rejected treating physician's conclusory check-list report); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject check-off reports that do not explain basis for conclusions); Matney, 981 F.2d at 1019 (ALJ may discredit treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (preference for individualized medical opinions over check-off reports). Accordingly, the ALJ did not err in failing to discuss the Mental Evaluation.

**F.    The ALJ Posed a Complete Hypothetical Question to the Vocational Expert**

At the hearing, the ALJ posed the following question to the VE:

Q:    All right . . . based upon a person 35 to 42 years of age, with a high school education, with no past relevant work experience, would there be jobs for that person using – no exertional limitations, but the mental limitation as given by

>    Dr. Sherman that she should have a job of simple, repetitive, non-public tasks.
>    There any jobs within that?

(AR 1191.) Later, the ALJ asked:

>    Q: . . . If this person could do a full range of entry-level unskilled, light work . . .
>    can understand, remember, and carry out simple instructions, use judgment in
>    making work-related decisions, making personal plans, and dealing with
>    changes in a routine work setting, with mild limitations in responding to
>    supervision, coworkers, and work situations . . . would there be any difference
>    in your opinion . . . ?

(AR 1192.)

Plaintiff contends that this was an incomplete hypothetical because it "fails to set out factors bearing upon Plaintiff's multiple limitations as set forth above in Issue No. 3 and Issue No. 5." (JS 18-19.) Plaintiff's contention is without merit.

At step five of the sequential evaluation, the Commissioner can meet his burden: (1) by reference to the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2; or (2) through the testimony of a VE as to other work in the economy that Plaintiff could perform. Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). An ALJ must propound a hypothetical question to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001); see also Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." (emphasis in original)). The hypothetical should be "accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record. Magallanes, 881 F.2d at 756-57.

As discussed above, the ALJ was not required to incorporate Dr. Singh's treatment notes or the Mental Evaluation into his RFC assessment. The ALJ's RFC assessment was

otherwise supported by substantial evidence regarding Plaintiff's limitations without alcohol abuse. Accordingly, a hypothetical that did not include the limitations stated in Dr. Singh's treatment notes or the Mental Evaluation was proper. See Magallanes, 881 F.3d at 756-57. The ALJ appropriately relied on the VE's response to the hypotheticals in finding that Plaintiff could perform alternative work as a small products assembler and house cleaner. (AR 400-01, 1191-93.)

**ORDER**

IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 21, 2010

/s/ John E. McDermott
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE